**Dolores DURBIN, Administratrix of the Estate of David Durbin, Individually and on behalf of Lisa Marie Durbin and David Durbin, Jr., minors and Rodrigo Durbin, Appellants,**

v.

**CULBERSON COUNTY, Appellee.**

No. 08–03–00202–CV.

Court of Appeals of Texas, El Paso.

April 1, 2004.

C.R. Kit Bramblett, Bramblett & Bramblett, P.C., El Paso, for Appellants.

Richard Bonner, Kemp, Smith, Duncan & Hammond, P.C., El Paso, for Appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## *OPINION*

SUSAN LARSEN, Justice.

This is an appeal from a summary judgment in a wrongful death suit. We affirm.

### FACTUAL AND PROCEDURAL SUMMARY

On February 21, 1994, David Durbin was installing and changing lights at a baseball field owned by Culberson County and used by the Culberson County Independent School District. Durbin was electrocuted and died as a result. On February 16, 1996, Durbin's wife, children and estate sued the County and the School District under the wrongful death and survival actions of Texas Civil Practice and Remedies Code Chapter 71 and the Texas Tort Claims Act. Appellants also sued under the Texas Constitution, article XVI, section 26 and Vernon's Annotated Texas Statute, article 8306, section 5.

The County filed its answer, and later filed a motion for summary judgment on April 11, 1997. The trial court granted summary judgment in favor of the County on April 28, 1997. Appellants filed an original petition for bill of review on January 25, 1999 asserting they never received notice setting a hearing on the County's motion for summary judgment. On October 28, 1999, the trial court set aside the previous order granting summary judgment in favor of the County.

The County then filed a renewed motion for summary judgment on February 28, 2003. Appellants then filed their Fourth Amended Petition and responded to the County's summary judgment motion on March 17, 2003. The County replied to the appellants' response to their summary judgment motion on March 20, 2003. Appellants filed objections to the County's reply on March 24, 2003. The motion was granted on March 24, 2003, and this appeal ensued.

### OBJECTIONS TO THE REPLY TO APPELLANTS' RESPONSE TO THE COUNTY'S SUMMARY JUDGMENT MOTION

In their Point of Error Two, appellants argue that the trial court should not have considered the County's reply as part of the summary judgment record. In Point of Error Three, appellants assert that the trial court incorrectly overruled their objection to the reply since the appellants were never apprized of the arguments contained in the reply. We will consider these two points of error together.

#### Pertinent Procedural Facts

The County filed its renewed motion for summary judgment on February 28, 2003, with the appellants replying on March 17, 2003. Between the filing of the County's motion for summary judgment and the appellants' reply, the appellants filed their Second and Third Amended Petitions. On March 17, 2003, the day of their summary judgment reply, the appellants filed their final and Fourth Amended Petition. Beginning in their Second Amended Petition, appellants argued that the County owed the decedent a duty under the Texas Occupational Safety Act.

The County addressed the appellants' new argument that the County owed a nondelegable duty to the decedent under the Texas Occupational Safety Act in their reply to the appellants' response to the County's motion for summary judgment. Appellants contended in their objection to the County's reply, filed on March 24, 2003, that when the County faxed over their reply that some of the pages were not received. Appellants argued that of the first ten pages of the County's reply that only pages 1, 7, 9, and 10 were re-

ceived. Appellants further assert that when the County was asked to re-fax the reply that the same pages were left out again, which was not noticed until March 22, 2003. Appellants requested that the trial court strike the reply from the summary judgment record since the appellants had no idea what the County was arguing in its reply. The summary judgment hearing was held on March 24, 2003 with the trial court granting the County's motion for summary judgment.

### Arguments as to the Reply

Appellants argued that the pleadings must give fair notice of the claims, defenses, and relief sought and that it was reversible error for the trial court to consider the County's reply as summary judgment evidence when the appellants were not fairly and timely apprized of the arguments. The County argued that there was no provision under Texas Rule of Civil Procedure 166a which sets a deadline for filing a reply and that appellants had waived their complaint.

### Law Applicable to the Summary Judgment Reply

■ While appellants' argument that pleadings must give fair notice of claims is correct, we are dealing with a motion for summary judgment and its reply, not a pleading. "A motion is an application for an order." *Jobe v. Lapidus,* 874 S.W.2d 764, 765 (Tex.App.-Dallas 1994, writ denied) (citing *Crain v. San Jacinto Sav. Ass'n,* 781 S.W.2d 638, 638 (Tex.App.-Houston [14th Dist.] 1989, writ dism'd)). "A motion is not at the same level as a pleading." *Id.* at 765–66.

While Rule 166a(c) states as follows: "Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing," the County's reply cannot be construed as an amended summary judgment motion because it does not address new grounds for judgment. TEX.R. CIV. P. 166a(c). The County's reply was just that—a reply to arguments made by the appellants in their response. A non-movant may submit evidence of its response to a summary judgment motion only up to seven days before the hearing. TEX.R. CIV. P. 166a(c). However, this seven-day limit does not apply to a movant's reply. *See* TEX.R. CIV. P. 166a(c); *Knapp v. Eppright,* 783 S.W.2d 293, 296 (Tex. App.-Houston [14th Dist.] 1989, no pet.); *Alaniz v. Hoyt,* 105 S.W.3d 330, 339 (Tex. App.-Corpus Christi 2003, no pet.).

■ Furthermore, appellants have failed to properly preserve error. While appellants filed their objection to the County's reply at 11:40 a.m. on March 24, 2003, they never notified the trial court about their objection. Appellants appeared at the summary judgment hearing at 1:30 p.m. on the 24th, argued their response to the motion, and failed to bring their objection to the court's attention or to request a continuance. *See Davis v. Davis,* 734 S.W.2d 707, 712 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.) (holding that "[s]ince the appellant participated in the hearing on the appellees' motions for summary judgment without objection, and failed to ask for a continuance, rehearing, or new trial, he ha[d] waived any objection or right to appeal"); *Knapp,* 783 S.W.2d at 296 (finding no record of the appellant's objection at the summary judgment hearing). Accordingly, appellants' Point of Error Two is overruled.

### Arguments as to the Objections

Appellants argued that since the motion granting summary judgment was silent as to how the court ruled on its objection, this Court should treat the objection as being

implicitly overruled. Appellants contended that denying their objection constituted reversible error because they did not receive fair notice of the County's pleadings. The County argued that appellants failed to bring their objection to the attention of the trial court and obtain a ruling on their objection.

### Law Applicable to Objections

■ Rule of Appellate Procedure 33.1 provides that an appellant must do the following in order to preserve error:

> As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> (1) the complaint was made to the trial court by a timely request, objection, or motion that:
>
> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
>
> (B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and
>
> (2) the trial court:
>
> (A) ruled on the request, objection, or motion, either expressly or implicitly; or
>
> (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Tex.R.App. P. 33.1.

Therefore, appellants can preserve error if their objection was either expressly or implicitly overruled. Here, neither the motion granting summary judgment, nor the record from the summary judgment hearing, denoted whether the trial court considered appellants' objection in granting summary judgment. Therefore, we find that the ruling was not express.

■ Next, we must determine whether appellants' objection was implicitly overruled. "[A] trial court's ruling on an objection to summary judgment evidence is not implicit in its ruling on the motion for summary judgment." *Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 317 (Tex. App.-San Antonio 2000, no pet.); *see-also Allen ex rel. B.A. v. Albin,* 97 S.W.3d 655, 663 (Tex.App.-Waco 2002, no pet.) (agreeing with the San Antonio court and finding that granting of summary judgment does not implicitly overrule or sustain objections); *Wrenn v. G.A.T.X. Logistics, Inc.,* 73 S.W.3d 489, 498 (Tex.App.-Fort Worth 2002, no pet.) (holding that an appellate court cannot infer trial court ruled on an objection merely by granting summary judgment).

We cannot determine that the trial court implicitly overruled appellants' objection when we do not know if the trial court was even aware of the objection. The objection was filed at 11:40 a.m. on March 24, and the hearing on the summary judgment motion was held at 1:30 p.m. the same day. Appellants failed to bring their objection to the court's attention at the summary judgment hearing. We find no evidence that the objection was either expressly or implicitly overruled; therefore, appellants have waived their objection. Accordingly, appellants' Point of Error Three is overruled.

### GRANT OF SUMMARY JUDGMENT

In Point of Error One, appellants generally challenged the trial court's grant of summary judgment in favor of the County. Point of Error Four challenged the trial court's grant of summary judgment because genuine issues of material fact still existed. The County moved for summary judgment under Texas Rule of Civil Proce-

dure 166a(c) and (i). The trial court granted the motion but did not specify the grounds on which it relied. Therefore, we must affirm the trial court's judgment if any of the theories advanced in the motion are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). We will first examine the County's no-evidence summary judgment motion.

### Standard of Review

A no-evidence summary judgment is proper only when the non-movant has failed to prove there is a genuine issue of material fact on one or more of the elements identified in the motion. TEX.R. CIV. P. 166a(i). A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard that we apply in reviewing a directed verdict. *Marsaglia v. University of Texas, El Paso*, 22 S.W.3d 1, 3 (Tex. App.-El Paso 1999, pet. denied). The motion should be granted if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *Id.* at 4. If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* Less than a scintilla of evidence exists when the evidence is " 'so weak as to do no more than create a mere surmise or suspicion' " of a fact, and the legal effect is that there is no evidence. *Id.*

### Negligence

Appellants' cause of action rests upon the purported negligence or gross negligence of the County based on a premises defect. The elements of a common-law negligence claim are (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The appellants argued that the County had a duty to warn the decedent about an unreasonably dangerous condition and premises defect on its baseball field. In its summary judgment motion, the County claimed there was no evidence that it owed a duty to the decedent or exercised any control over his work.

The threshold inquiry in a negligence action is determining whether defendant owed a duty to the plaintiff. *Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex.1976). Existence of a duty is a question of law. *Oldaker v. Lock Constr. Co.*, 528 S.W.2d 71, 77 (Tex.Civ.App.-Amarillo 1975, writ ref'd n.r.e.).

### Independent Contractor Status

Under Texas law, an independent contractor is one "who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Pitchfork Land & Cattle Co. v. King*, 162 Tex. 331, 346 S.W.2d 598, 602–03 (1961); *Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 220 (Tex.App.-Houston [14th Dist.] 1994, writ denied). The standard tests for determining whether one is acting in the capacity of an independent contractor measure the amount of control that the employer exerts or has a right to exert over the details of the work. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 591 (Tex.1964); *Hoechst Celanese Corp.*, 899 S.W.2d at 220. In determining whether a person is an employee or an independent contractor, a court is required to examine a number of factors, including (1) the independent na-

ture of the contractor's business; (2) the obligation to supply necessary tools, supplies, and materials; (3) the right to control the progress of the work except as to final results; (4) the duration of the employment; and (5) the method of payment, whether by time or by the job. *Pitchfork Land & Cattle Co.*, 346 S.W.2d at 603; *Hoechst Celanese Corp.*, 899 S.W.2d at 220. The most fundamental of these factors is the right of control. *See Ross v. Texas One Partnership*, 796 S.W.2d 206, 210–11 (Tex.App.-Dallas 1990), *writ denied per curiam*, 806 S.W.2d 222 (Tex.1991). Where there exists no dispute about the controlling facts and only one reasonable conclusion can be inferred, the question of whether one is an "employee" or "independent contractor" is a question of law. *Crow v. TRW, Inc.*, 893 S.W.2d 72, 78 (Tex.App.-Corpus Christi 1994, no writ); *Sherard v. Smith*, 778 S.W.2d 546, 548 (Tex.App.-Corpus Christi 1989, writ denied).

Appellants argued that the County attempted to label the decedent as an "independent contractor" to show that it had no duty. They also contended that the decedent's employment status was not even at issue because the County had a nondelegable duty under the Texas Occupational Safety Act to warn the decedent about dangerous conditions that it knew about regardless of his employment status. However, we believe there is no dispute about the controlling facts and that only one reasonable conclusion can be drawn-the decedent was an independent contractor.

 Generally, an agreement providing that a person shall be an independent contractor and providing for no right of control is controlling in determining the relationship between the parties. *See Humphreys v. Texas Power & Light*, 427 S.W.2d 324, 329 (Tex.Civ.App.-Dallas 1968,

writ ref'd n.r.e.) (citing *Love*, 380 S.W.2d at 582). However, this rule is subject to two exceptions: (1) if the evidence shows that the contract is a mere sham, subterfuge, or cloak designed to conceal the parties' true relationship, or (2) the written contract has been modified by either an express or implied subsequent agreement. *Id.* (citing *Anchor Casualty Co. v. Hartsfield*, 390 S.W.2d 469 (Tex.1965)). The Stipulation and Agreement provided as follows:

WHEREAS, DAVID DURBIN (herein called "Independent Contractor") has agreed to perform certain services, on a contract basis, for CULBERSON COUNTY, TEXAS, described as follows: Installation of lights at 'Red Sox' baseball field in Van Horn, Texas; and,

NOW THEREFORE, Independent Contractor contracts and agrees that he will provide all necessary services as an 'independent contractor' and shall complete the necessary job absent the direction or control of the COUNTY. Independent Contractor stipulates and agrees that he shall *not* be deemed an agent, servant, or employee of the COUNTY, nor shall said Independent Contractor be a beneficiary of any COUNTY plans, benefits, or insurance normally provided by COUNTY for its ordinary full or part-time employees.

Independent Contractor agrees to take all precautions necessary for the safety and prevention of injury or damage to persons and property at or adjacent to the work site, and for the protection of all persons, including Independent Contractor and his employees, at or adjacent to the work site. Independent Contractor *assumes all risk* incident to the job to be performed and further agrees to release and to hold the COUNTY harmless from all liability for any losses, injuries, damages or expense suffered or

arising from any injury to persons or property arising from the job or in any way incident to the performance of the work contemplated. (Emphasis in original).

The agreement signed by the decedent showed as follows: (1) he was performing the work on a contract basis; (2) he was to perform one job, installation of the lights at the baseball field; (3) he was to complete the job absent control or direction from the County; (4) he was not an employee, servant, or agent of the County; (5) he was not a beneficiary of benefits given to County employees; and (6) he was to be an "independent contractor." There is no dispute that the decedent signed this contract before he began work. Furthermore, appellants have provided no evidence to show that the two exceptions under *Humphreys* to finding the agreement controlling are present. Therefore, we find that the decedent was an independent contractor.

### County's Duty

 The general rule is that an owner or occupier of land has a duty to use reasonable care to keep premises in a safe condition. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985). This duty may subject the premises owner to direct liability for negligence in two situations: (1) those arising from a premises defect, and (2) those arising from an activity on the premises. *Id.*; *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997). Appellants pleaded a cause of action for premises defect. Under the premises defect theory of premises liability there are two subcategories: (1) defects existing on the premises when the independent contractor/invitee entered; and (2) defects the independent contractor created by its work activity. *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex.1999). Under the first sub-

category, the premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist. *Id.* Only concealed hazards—dangerous in their own right and independent of action by another—that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects. *Id.* The appellants argued that the first subcategory applied because the hazard was that the decedent climbed to the top of an ungrounded, energized pole and that the County did not provide locked down switches. The appellants also argued that the County had a duty to warn the decedent about a reasonably dangerous condition. *See Gutierrez v. Scripps–Howard*, 823 S.W.2d 696 (Tex.App.-El Paso 1992, writ denied). However, the case at hand can be distinguished from *Gutierrez*. *Gutierrez* involved harm to a freelance photographer sent to a new hotel in Cd. Juarez, Mexico. *Id.* at 697. The newspaper sending the photographer had published previous articles about the hotel owner alleging he was a drug czar. *Id.* This Court held that the newspaper had a duty to warn the photographer of the dangerous condition that it had created by writing the articles about this hotel owner. *Id.* at 699. However, the case at hand does not involve a danger created by the County.

We conclude that the present case does not fall under the first subcategory of premises defects. The light pole was not a concealed hazard. The record indicated that it was clearly visible and that the decedent in fact worked on the pole. There is no evidence that the pole was in any way dangerous itself. We conclude that the light pole posed no danger until the decedent decided to change out the light bulbs on the pole with the power on

and by sticking a metal object into the bulb socket. Therefore, we must consider this case under the second premises defect subcategory. *See Lawrence*, 988 S.W.2d at 225 (holding pinch point area of premises owner's crane posed no danger until independent contractor's employees put the crane into operation); *Shell Chemical Co. v. Lamb*, 493 S.W.2d 742, 747 (Tex. 1973) (citing *Hailey v. Missouri, K. & T. R.R. Co.*, 70 S.W.2d 249 (Tex.Civ.App.-Fort Worth 1934, writ ref'd) (explaining that where there was no danger of a cave-in before independent contractor began excavation, employee of independent contractor could not recover under premises defect subcategory)); *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 446 (Tex.App.-Amarillo 1985, writ ref'd n.r.e.) (power line posed no danger until employee of independent contractor caused pole to come into contact with it).

 Under the second subcategory—when the dangerous condition arises as a result of the independent contractor's work activity—the premises owner normally owes no duty to the independent contractor's employees because an owner generally has no duty to ensure that an independent contractor performs its work in a safe manner. *Lawrence*, 988 S.W.2d at 225. However, a premises owner may be liable when the owner retains the right of supervisory control over work on the premises. *Id.* at 225–26. In determining whether an owner has retained this right to control, the standard is narrow. *Id.* at 226. The right to control must be more than a general right to order work to stop and start, or to inspect progress. *Id.* The supervisory control must relate to the activity that actually caused the injury and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner. *Id.*

 A party can prove the "right to control" in two ways: (1) by evidence of a contractual agreement which explicitly assigns the premises owner a right to control; and (2) in the absence of a contractual agreement, by evidence that the premises owner actually exercised control over the job. *Id.* Here, there was a contractual agreement. The Stipulation and Agreement stated as follows:

> NOW THEREFORE, Independent Contractor contracts and agrees that he will provide all necessary services as an 'independent contractor' and shall complete the necessary job absent the direction or control of the COUNTY.

Appellants never asserted that the County exercised actual control over the decedent's work, but appellants did argue that even though the contract stated that the County retained no control over the decedent's work that the County had a right to control under the Texas Occupational Safety Act. The fact that in the agreement the County instructed the decedent to take safety precautions in his work is not evidence that the County had a right to control the manner in which decedent performed his work. appellants have failed to produce evidence which shows that the County directed decedent's work. Thus, we conclude that there is no evidence that the County exercised or retained supervisory control over the decedent.

 In their response to the County's summary judgment motion, appellants asserted that the County owed a duty to the decedent under the Texas Occupational Safety Act ("the Act"). The Act provides that "[i]t is a primary, continuing and non-delegable duty of the employer to provide a safe place and safe conditions in which his employees may work." *Cabrera v. Delta Brands, Inc.*, 538 S.W.2d 795, 797 (Tex. Civ.App.-Texarkana 1976, writ ref'd n.r.e.)

(citing Tex. Labor Code Ann. § 411.103 (Vernon 1996);[1] *Sloan v. Leger Mill Co.*, 161 S.W.2d 333 (Tex.Civ.App.-Amarillo 1942, writ ref'd w.o.m.)). As a part of that obligation, the employer must instruct employees in the safe use and handling of the products and equipment used in and around the employer's plant or facilities.

■■■ In its reply, the County asserted that its sovereign immunity had not been waived under the Act. Generally, the legislature must express a clear and unambiguous intent to waive sovereign immunity. *See Foster v. Denton Indep. School Dist.*, 73 S.W.3d 454, 463 (Tex.App.-Fort Worth 2002, no pet.). The legislature routinely uses language that leaves no doubt about its intent to waive immunity. *See, e.g.,* Tex. Civ. Prac. & Rem.Code Ann. § 63.007(b) (Vernon Supp.2004) ("The state's sovereign immunity to suit is waived...."); *Id.* § 101.025 (Vernon 1997) ("Sovereign immunity to suit is waived...."); *Id.* § 103.101(a) (Vernon Supp.2004) ("[T]he state's immunity from the suit is waived."); *Id.* § 110.008(a) (Vernon Supp.2004) ("[S]overeign immunity to suit and from liability is waived and abolished...."); Tex. Educ.Code Ann. § 51.901(b) (Vernon 1996) ("The defense of sovereign immunity shall not be available...."). Nevertheless, the supreme court has also found that the legislature has waived sovereign immunity when the language of a statute leaves no reasonable doubt that the legislature intended to waive the governmental unit's sovereign immunity. *See Foster*, 73 S.W.3d at 463 (citing *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 8 (Tex.2000) (holding that the legislature intended to waive sovereign immunity in the State Applications Act by designating state agency as an employer, which the legislature would not have done if they intended state agencies to be immune from anti-retaliation law claims); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 296–97 (Tex.1995) (concluding that the legislature must have intended to waive immunity because the provisions of the anti-retaliation law are not susceptible to any sensible construction absent that conclusion)). "The Legislature neither expressly waived sovereign immunity in article 5182a, nor are we unable to sensibly interpret the statute in light of sovereign immunity." *Foster*, 73 S.W.3d at 463. In *Foster*, the court found that the legislature did not expressly waive sovereign immunity in article 5182a and that there was no clear and ambiguous language expressing the legislature's intent to waive sovereign immunity. *Id.* at 463. We agree and find no waiver of sovereign immunity under the Act. A county is not specifically included within the definition of an "employer" under the Act. Appellants offered no evidence showing why the legislature would have intended to waive sovereign immunity.

We find that appellants have failed to provide more than a scintilla of evidence to raise a genuine issue of material fact as to the County's duty. Furthermore, appellants have failed to produce evidence establishing that the County exercised or retained control over the manner in which the decedent performed his job, so the rule that the premises owner owes no duty to an independent contractor or his employees applies. *See Lawrence*, 988 S.W.2d at 225; *Olivo*, 952 S.W.2d at 527–28; *Lamb*, 493 S.W.2d at 747. Since the appellants have failed to produce evidence on an essential element of their claim, we find that

---

1. *Cabrera* cites to the old version of the Texas Occupational Safety Code since the cause of action accrued in 1994. *See* Acts 1967, 60th Leg., R.S., ch. 201, 1967 Tex. Gen. Laws 441, *amended by* Acts 1985, 69th Leg., R.S., ch. 931, art. 11, § 1, 1985 Tex. Gen. Laws 3150, *codified by* Acts 1995, 74th Leg., R.S., ch. 76, § 9.54, 1995 Tex. Gen. Laws 656.

the trial court properly granted summary judgment on this basis. TEX.R. CIV. P. 166a(i). Accordingly, appellants' Points of Error One and Four are overruled.

## CONCLUSION

The trial court's grant of summary judgment in favor of the County is affirmed.