COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-143-CV

 

 

ROBERT L. WILSON                                                             APPELLANT

 

                                                   V.

 

AGRI-EMPRESSA, INC.                                                            APPELLEE

 

                                              ------------

 

               FROM THE 97TH DISTRICT COURT OF CLAY COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








In four issues, Appellant Robert L. Wilson (AWilson@)
asserts that the trial court erred in granting summary judgment to
Agri-Empressa, Inc. (AAgri-Empressa@).  Wilson asserts in his first three issues that
the trial court was mistaken in determining that Agri-Empressa had no duty to
Wilson, and in his fourth issue, that the trial court was mistaken in
determining that any negligence on the part of Agri-Empressa was not a
proximate cause of Wilson=s injuries.  

II. 
Factual and Procedural Background

On April 1, 2003, Wilson, a truck driver working
for Westar  Transportation, Inc. (AWestar@), fell
while attempting to secure a load on his trailer while on the premises of
Agri-Empressa where his truck had been loaded.








Agri-Empressa was one of Westar=s main
customers, and Wilson picked up loads there frequently.  On the day of the accident, Agri-Empressa
employees loaded Wilson=s truck and used forklifts to
place tarps on top of the load.  Wilson
then applied straps to the load.  After
his trailer was loaded, Wilson moved his truck and trailer adjacent to wooden
pallets stored at the yard so that he could use the pallets as Astairs@ to
climb to the top of the trailer to secure the tarps.  This was Wilson=s
regular practice, and he performed the task without assistance.  At some point in the past, Agri-Empressa had
used forklifts to lift Wilson onto the load so he could secure the straps and
tarps.  Normally, Wilson jumped off the
top of the load onto the highest pallet, which he used as a stair.  However, on the day of the accident, the
pallet on which he would have jumped was about three feet square, and he was
concerned that he might miss it because of its size.  He decided not to jump, but he did not call
for help. Wilson decided to try to slide down holding onto a hand hold in the
tarp, but he lost his grip, fell, and hit a pallet with his hip.  He finished tarping his load and did not
report the incident to Agri-Empressa, but he subsequently alleged that he was
injured.  He later sued
Agri-Empressa.  In his suit, Wilson
contended that on the day of the accident he asked Agri-Empressa for a ladder,
and they failed to provide one for him because they said they did not have one
tall enough.  Agri-Empressa disputed this
contention.  Subsequent to this event,
Agri-Empressa installed a tarping station to facilitate the loading process.  A tarping station is a series of elevated
platforms for the drivers to walk upon with safety harnesses to prevent a
fall.  The system has a sign requiring Aall
drivers@ to use
the tarping station.  Agri-Empressa said
that Aall
drivers@ does
not mean Aall drivers@;
rather, the sign is intended only for drivers who are employees of
Agri-Empressa.

Agri-Empressa filed a motion for summary judgment
arguing that it had  fulfilled any
obligations it owed to Wilson as a business invitee, that the duty to secure
loads rested on Wilson, not Agri-Empressa, that Agri-Empressa did not retain
any duty to Wilson regarding securing the loads, and that Agri-Empressa did not
proximately cause Wilson=s fall.  The trial court granted the motion without
specifying the basis therefor.  This
appeal followed.

 








III. 
Standard of Review

A.  Motion for Summary Judgment

In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.

When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  Evidence
that favors the movant=s position will not be
considered unless it is uncontroverted.  Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47
(Tex. 1965).  But we must consider
whether reasonable and fair-minded jurors could differ in their conclusions in
light of all of the evidence presented.  See
Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City
of Keller v. Wilson, 168 S.W.3d 802, 822-24 (Tex. 2005).








The summary judgment will be affirmed only if the
record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of action or defense as
a matter of law.  Clear Creek Basin,
589 S.W.2d at 678.

B.  Lack of Specificity

When a trial court=s order granting
summary judgment does not specify the ground or grounds relied on for its
ruling, summary judgment will be affirmed on appeal if any of the theories
presented to the trial court and preserved for appellate review are
meritorious.  Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003); Star-Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).

                                            IV.
Negligence and Duty

A. Negligence

As pointed out by Agri-Empressa, it is axiomatic
that to prove a negligence claim Wilson is required to prove that he was owed a
duty, that the duty was breached, and that the breach proximately caused his
injury.  See Greater Houston Transp. Co.
v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).

B. Premises Liability and the Genesis of a Duty








An owner or occupier of land generally has a duty
to use reasonable care to make and keep the premises safe for invitees.  Clayton W. Williams, Jr., Inc. v. Olivo,
952 S.W.2d 523, 527 (Tex. 1997).  In
Agri-Empressa=s motion for summary judgment
and in Wilson=s original petition, the parties
acknowledge that Wilson was a business invitee. 
Our sister court has recently summarized the duty of an owner or
occupier of land under these circumstances.

The general rule is that an owner or occupier of land has a duty to
use reasonable care to keep premises in a safe condition.  Redinger v. Living, Inc., 689 S.W.2d
415, 417 (Tex. 1985).  This duty may
subject the premises owner to direct liability for negligence in two
situations:  (1) those arising from a
premises defect, and (2) those arising from an activity on the premises.  Id.; Clayton W. Williams, Jr., Inc. v.
Olivo, 952 S.W.2d 523, 527 (Tex. 1997). 
Under the premises defect theory of premises liability there are two
subcategories:  (1) defects existing on
the premises when the independent contractor/invitee entered; and (2) defects
the independent contractor created by its work activity.  Coastal Marine Serv. of Tex., Inc. v.
Lawrence, 988 S.W.2d 223, 225 (Tex. 1999). 
Under the first subcategory, the premises owner has a duty to inspect
the premises and warn the independent contractor/invitee of dangerous
conditions that are not open and obvious and that the owner knows or should
have known exist.  Id.  Only concealed hazardsBdangerous in their own
right and independent of action by anotherBthat are in existence when the independent
contractor enters the premises fall into this first subcategory of premises
defects.  Id. 

 

Durbin v. Culberson County, 132 S.W.3d 650, 660 (Tex. App.CEl Paso
2004,  no pet.) (emphasis supplied).

C. Open and Obvious








In his second issue, Wilson argues that the trial
court erred in granting summary judgment because the first subcategory, the Aopen and
obvious@
exception to the owner/occupiers=s duty,
was obviated long ago in Parker v. Highland Park, Inc., 565 S.W.2d 512,
516-17 (Tex. 1978).  In that case, the
court said that prior to the opinion, part of the plaintiff=s burden
was to negate the Ano-duty rule@ when
dangers are open and obvious.  The court
went on to Aexpressly abolish the so called
no-duty concept.@ 
Id.  Agri-Empressa responds
that Parker changed the plaintiff=s burden
of proof but did not change the defendant=s duty
of care.  We agree.  In the Parker case, the court noted
that as an invitee, Parker had to prove that the occupier of land had a duty to
take reasonable precautions to warn or protect him from conditions of
unreasonable risk or harm, that is, that the invitee had to negate the Ano-duty@
concept, or negate the concept that the occupier did not owe a duty to warn of
open and obvious dangers.  Id.  An invitee has no such duty today.  Our supreme court and courts of appeals have
indicated in later cases the duty of a premises owner or occupier with regard
to open and obvious risks.  








A[T]he premises owner has a duty
to inspect the premises and warn the independent contractor/invitee of
dangerous conditions that are not open and obvious and that the owner
knows or should have known exist.@  Coastal Marine Serv. of Tex., Inc. v.
Lawrence, 988 S.W.2d 223, 225 (Tex. 1999) (emphasis supplied).  AThis
duty [using reasonable care to make the premises safe for the use of business
invitees] includes warning invitees of known hidden dangers that present
an unreasonable risk of harm.@  Lefmark Mgmt. Co. v. Old, 946 S.W.2d
52, 53 (Tex. 1997) (emphasis supplied). 
This is common sense.  No warning
should be needed for an Aopen and obvious@
condition.  As it is undisputed that the
condition presented by the pallets was Aopen and
obvious,@ we hold
that the trial court correctly concluded that Agri-Empressa had no duty to warn
Wilson of this condition under the first subcategory of premises liability
theory as articulated in Durbin. 
We overruled Wilson=s second
issue.

D. Control

In his first issue, Wilson argues that summary
judgment was improper because a material fact question existed as to whether
Agri-Empressa retained sufficient control to create a duty.  Wilson points out that under the second
subcategory of a potential premises owner=s
liabilityCwhen the dangerous condition
arises as a result of the independent contractor=s work
activityCalthough
the premises owner normally owes no duty to the independent contractor because
he has no duty to insure that an independent contractor preforms its work in a
safe manner, an exception applies when the owner retains supervisory control
over the work on the premises.  Olivo,
952 S.W.2d  at 528.

However,  








in determining whether an
owner has retained this right to control, the standard is narrow.  The right to control must be more than a
general right to order work to stop and start or to inspect progress.  The supervisory control must relate to the
activity that actually caused the injury, and grant the owner at least the
power to direct the order in which work is to be done or the power to forbid it
being done in an unsafe manner.

 

Coastal Marine Serv., 988 S.W.2d at 226.  The right of control can be shown
contractually, of which there is no evidence here, and also by the actual
exercise of control.  Olivo, 952
S.W.2d at 528.








It is instructive to note that in the case before
this court, with regard to securing and tarping the loads, Wilson testified
that it was Amy responsibility,@ that he
was an expert in performing the task, and that Ait=s not
the responsibility of Agri-Empressa . . . [i]t=s my
responsibility for my truck and my load.@  Further, Agri-Empressa=s
president testified that Wilson, like other independent contractors, would
receive help only if he asked them to. 
There was no testimony that Agri-Empressa retained any control, or right
of control, over Wilson as to how, when, or where the tarps were strapped
down.  As noted in Olivo, A[t]he
rule stated in this Section [Restatement
Second of Torts ' 414 comment b] is usually,
though not exclusively, applicable when a principal contractor entrusts a part
of the work to subcontractors, but himself or through a foreman superintends
the entire job,@ which is not the case
here.  Olivo, 952 S.W.2d at
528.  Also, John Billings, the owner of
Westar, testified as follows: 

Q.  It was not your expectation,
was it, sir, that Agri-Empressa employees would take part in the tarping or
securement of Mr. Wilson=s trailer on the date of
this accident; is that correct? 

 

A.  No. 

 

. . . . 

 

Q.  And you know, do you not,
sir, that Mr. Wilson did not expect Agri-Empressa to assist him in any form or
fashion in securing his load; is that correct? 

 

A.  That is correct.  

 

Q.  And that would be true for
all the Westar drivers at the Agri yard, correct.  

 

A.  Correct.

 








In a case very similar to the one we are
considering, the United States District Court of the Southern District of Texas
found that no such supervisory control existed, applying Texas law.  Waddy v. Mobil Oil Corp., 756 F.Supp.
1010, 1014 (S.D. Tex. 1990).  Waddy had
asserted that he was injured while slipping and falling off his loaded truck
when a clip broke while he was performing the tarping operation.  Mobil asserted that it did not exercise
control over the tarping procedure and did not operate or maintain the trailer
being tarped.  Further, Waddy testified
that he was free to do the tarping in his own way and no Mobil employee
witnessed or supervised the tarping procedure. 
The court noted that as a premises owner Mobil had the right to assume
that the independent contractor would take the necessary precautions to assure
the safety of its employees, citing Jenkins v. Fritzler Development Corp.,
580 S.W.2d 63, 65 (Tex. Civ. App.CHouston
[1st Dist.] 1979, writ ref=d
n.r.e.).  The court went on to observe
that Waddy was required to tarp his trailer both by his employer and by the law
of the State of Texas.[2]  Waddy, 756 F.Supp. at 1013.  Under these circumstances, the court found
that Athe
defendant owed no duty to provide safety racks and other safety devices to
protect plaintiff while he tarped his load,@ and
thus granted summary judgment for Mobil.  Id. at 1014.

We agree with the district court=s
analysis and hold that the requisite supervisory control purported to be
exerted by Agri-Empressa was absent under these circumstances.  

E. Subsequent Remedial Measure













Wilson next argues that Agri-Empressa=s
installation of a dedicated tarping station and requirement that all drivers
use it was a subsequent remedial measure that implied control, citing Hagins
v. E-Z Mart Stores, Inc., 128 S.W.3d 383, 391 (Tex. App.CTexarkana
2004, no pet.) (holding that a subsequent remedial measure was legally
sufficient Aweak at best@
evidence of control over the work of an employee of an independent contractor),
and Tyson Foods, Inc. v. Guzman, 116 S.W.3d 233, 242 (Tex. App.CTyler
2003, no pet.) (holding that evidence of subsequent remedial measures was
admissible when control over the employee of an independent contractor was
contested). Stephen Goree, president of Agri-Empressa, testified with regard to
the tarping station that although there is a sign that says, AAll
loads must be tarped.  Driver must use
the tarping station,@ the sign @only
applies to our drivers.  We don=t have
any control over the other drivers,@ and
that independent contractors are not required to use the new tarping station
because A[t]hey
can do what they want to do.@[3]  No evidence from drivers was elicited to
refute this explanation.  Further,
Agri-Empressa observed that the tarping station was installed before
Agri-Empressa first learned of Wilson=s
accident, which was at the time he filed suit. 
This latter observation is, however, immaterial because control is the
issue, not whether Agri-Empressa believed it was trying to correct a problem it
should have previously remedied.  This
goes to negligenceCand is not a subject for
remedial-measure-evidence admissibility.

Nevertheless, under these circumstances, we
cannot say that there exists a factual or legal issue on the question of control
that would preclude summary judgment. 
Wilson=s first issue is overruled. 

V. 
Conclusion

Having overruled Wilson=s first
and second issues, we are not required to reach his third and fourth issues
because they are dependent upon the existence of a fact issue as to duty.  We affirm the trial court=s
judgment.

 

BOB
MCCOY

JUSTICE

 

PANEL A:   CAYCE,
C.J.; LIVINGSTON and MCCOY, JJ.

 

DELIVERED: February 21,
2008











[1]See Tex. R. App. P. 47.4.





[2]See Act of May 13, 1971,
62nd Leg., R.S., ch. 363, ' 1, 1971 Tex. Gen. Laws 1376, repealed by Act
of Apr. 21, 1995, 74th Leg., R.S., ch. 165, '24(a), 1995 Tex. Gen. Laws 1870 (current version
at Tex. Transp. Code Ann. ' 75.021 (Vernon 2007)).





[3]He further testified as
follows:

 

Q.  Mr. Goree, you don=t believe that you can
tell those other drivers what to do when they=re on your property
dealing with your product?

 

A.  No.  They=re an independent contractor.  They have to haul it down the road.  And they know what they can haul legally on
their truck and how they have to secure their load by D.O.T. regulations.  And if they get pulled over and it=s not strapped correctly,
they get the ticket.  It is their
responsibility.